No. 23-55276

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

LANCE BOLAND; MARIO SANTELLAN; RENO MAY; JEROME SCHAMMEL; AND
CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED,
*Plaintiffs-Appellees*,

v.

ROB BONTA, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,
*Defendant-Appellant.*
_____

**On Appeal from the United States District Court
for the Central District of California
No. 22-cv-1421-CJC-ADS
The Honorable Cormac J. Carney, Judge**
_____

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR A PARTIAL STAY OF THE PRELIMINARY INJUNCTION
PENDING APPEAL AND FOR AN INTERIM ADMINISTRATIVE STAY
ENTERED BEFORE APRIL 3, 2023**

**IMMEDIATE RELIEF REQUESTED**
_____

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
P. PATTY LI
Supervising Deputy Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General

CHARLES J. SAROSY
Deputy Attorney General
State Bar No. 302439
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013-1230
 Telephone: (213) 269-6356
 Fax: (916) 731-2119
 Email: Charles.Sarosy@doj.ca.gov
*Attorneys for Defendant-Appellant*

March 27, 2023

## CIRCUIT RULE 27-3 CERTIFICATE

The district court issued an order on March 20, 2023, preliminarily enjoining three requirements of California's Unsafe Handgun Act (UHA): the chamber load indicator requirement, the magazine disconnect mechanism requirement, and the microstamping requirement. Defendant-Appellant Rob Bonta, in his official capacity as the Attorney General of the State of California, moves this Court for a partial stay of the district court's preliminary injunction pending appeal, staying the portion of the court's order enjoining the chamber load indicator and magazine disconnect mechanism requirements (Cal. Penal Code § 31910(b)(4), (5)). *See* Fed. R. App. P. 8(a)(2); 9th Cir. R. 27-3. Defendant does not seek a stay of the portion of the district court's order preliminarily enjoining the microstamping requirement (Cal. Penal Code § 31910(b)(6)). Defendant also moves on an emergency basis for an interim administrative stay of the same scope, pending this Court's resolution of the instant motion, to be entered as soon as possible, but no later than April 3, 2023, when the district court's injunction is scheduled to take effect.

The preliminary injunction entered by the district court enjoins enforcement of certain provisions of the UHA regulating the commercial sale of semiautomatic pistols. The challenged provisions have been in effect for more than a decade. Copies of the district court's order and preliminary injunction are attached as Exhibits 1 and 2 to the accompanying Declaration of Charles J. Sarosy. The UHA

1

was originally enacted over two decades ago in response to the proliferation of low cost, cheaply made handguns that posed consumer safety risks. Under the UHA, the California Department of Justice compiles and maintains a Roster of Certified Handguns (the "Roster") that meet certain public safety requirements. Generally, a handgun must appear on the Roster to be sold by a California firearm dealer. When the UHA was first enacted, revolvers and pistols were required to have safety devices and pass drop-safety and firing tests at independent laboratories in order to be added to the Roster. Those requirements are not at issue in this preliminary injunction. The UHA has since been amended, adding further safety requirements for semiautomatic pistols only. These additional requirements were imposed on a prospective basis, meaning that semiautomatic pistols already on the Roster without these safety features could remain there.

Since January 2007, for a new semiautomatic pistol to be added to the Roster, the UHA has required a chamber load indicator (a device that indicates the pistol is loaded) and a magazine disconnect mechanism (a device that prevents the pistol from firing when the magazine is not inserted). Nearly three dozen semiautomatic pistols with these safety features were added to the Roster after those requirements took effect. Today, nearly 500 semiautomatic pistols and over 800 handguns are listed on the Roster and are available for retail sale in the State.

Since May 2013, the UHA has also required a new semiautomatic pistol to have "microstamping" capability (a way for law enforcement to trace a shell casing

to the pistol that fired it).  No new semiautomatic pistols have been added to the Roster since the microstamping requirement took effect.

Under the express terms of the district court's order, the California Department of Justice is enjoined from "otherwise preventing the retail sale of [semiautomatic pistols] that do not have a chamber load indicator, a magazine disconnect mechanism, or microstamping capability but that meet the other requirements of the Unsafe Handgun Act."  D.Ct. Dkt. 61 at 2.  Absent a partial stay, the district court's preliminary injunction will allow an infusion of additional semiautomatic pistols without chamber load indicators or magazine disconnect mechanisms into the marketplace.  This infusion is unwarranted given substantial evidence that these requirements advance public safety and are technologically feasible.  Defendant presented three studies demonstrating that chamber load indicators and magazine disconnect mechanisms could prevent accidental shootings.  D.Ct. Dkt. 48, Def.'s Ex. 12 at 17 (chamber load indicators could have prevented 23 percent of the studied accidental shooting deaths, including two cases involving minors); D.Ct. Dkt. 54 at 202-03 (chamber load indicators, magazine disconnect mechanisms, and firing pin blocks could have prevented one third of studied accidental shootings); D.Ct. Dkt. 54 at 204-05 (a chamber load indicator could have prevented 20 percent of studied accidental shootings while a magazine disconnect mechanism could have prevented 4 percent); Assemb. B. 2847, 2019-2020 Reg. Sess. (Cal. 2022) (legislative finding noting that the rate of accidental

3

shooting deaths in the State decreased by two-thirds between 2014 and 2018, after the chamber load indicator and magazine disconnect mechanism requirements were added to the UHA, compared to 1996 to 2000, before they were required). Even Plaintiffs' evidence showed a 13.4 percent decrease in self-inflicted injuries and a 12.7 percent decrease in unintentional injuries to others from 2005 to 2015. D.Ct. Dkt. 60 at 21, n.8. This evidence is consistent with how this Court has previously described the safety benefits of chamber load indicators and magazine disconnect mechanisms. *See Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018); *id.* at 988 (Bybee, J., concurring in part).

Defendant also presented evidence that five manufacturers added 34 semiautomatic pistols with chamber load indicators and magazine disconnect mechanisms to the Roster between 2007 and 2013, before the microstamping requirement took effect. D.Ct. Dkt. at 56-2 ¶¶ 5-6, 8-9, 11. Today, 32 such pistols remain on the Roster. Massachusetts, which requires semiautomatic pistols to have either a chamber load indicator or a magazine disconnect mechanism, maintains a roster of approved handguns listing numerous other semiautomatic pistols with a chamber load indicator or magazine disconnect mechanism. *Granata v. Healey*, 603 F. Supp. 3d 8, 10-11 (D. Mass. 2022), *appeal docketed*, No. 22-1478 (1st Cir. June 22, 2022).

Without a partial stay, manufacturers will undoubtedly seek to expand the proportion of firearms available on the primary market that lack these two

commonsense safety features.  This would upset the status quo that has governed the commercial sale of semiautomatic pistols for over the last decade within the State.  Semiautomatic pistol manufacturers can be expected to flood the Bureau of Firearms, which administers the Roster, with hundreds of requests to safety test semiautomatic pistols that lack the three challenged UHA requirements.  Such an administrative burden is not warranted in this interlocutory posture, particularly given the availability of 800 other models of handguns within the State.

Soon after the U.S. Supreme Court issued its decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), Plaintiffs filed this suit in the district court, challenging the constitutionality of the entire UHA.  Plaintiffs subsequently moved to preliminarily enjoin only the chamber load indicator, magazine disconnect mechanism, and microstamping requirements, arguing that they had the burden to establish only one of the four preliminary injunction factors—the likelihood of success on the merits—under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  D.Ct. Dkt. 50 at 155; D.Ct. Dkt. 57 at 19.  The district court granted the preliminary injunction on March 20, 2023, and stayed the injunction for 14 days to allow Defendant to seek an additional stay from this Court.  Without intervention by this Court, the preliminary injunction will take effect on April 3, 2023.

This motion seeks a partial stay pending resolution of this appeal.  The partial stay would preserve the chamber load indicator and magazine disconnect

mechanism requirements, while allowing the preliminary injunction against the microstamping requirement to take effect. Defendant also requests an administrative stay to preserve the status quo while the Court considers this emergency motion.

The undersigned counsel certifies the following the information, as required by Ninth Circuit Rule 27-3(c).

**(1)  Names, Telephone Numbers, E-Mail Addresses, and Office Addresses for the Attorneys for All Parties (9th Cir. R. 27-3(c)(i)):**

*Counsel for Defendant-Appellant:*
Charles J. Sarosy (charles.sarosy@doj.ca.gov)
Thomas S. Patterson (thomas.patterson@doj.ca.gov)
P. Patty Li (patty.li@doj.ca.gov)
Mark R. Beckington (mark.beckington@doj.ca.gov)
Office of the California Attorney General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6356
      Fax:  (916) 731-2119

*Counsel for Plaintiffs-Appellees:*
C.D. Michel (cmichel@michellawyers.com)
Joshua Robert Dale (jdale@michellawyers.com)
Sean A. Brady  (sbrady@michellawyers.com)
Alexander A. Frank (afrank@michellawyers.com)
Konstadinos T. Moros (kmoros@michellawyers.com)
MICHEL & ASSOCIATES, P.C.
  180 E. Ocean Boulevard, Suite 200
  Long Beach, CA 90802
  Telephone: (562) 216-4444

Facsimile: (562) 216-4445

**(2)    Facts Showing the Existence and Nature of the Emergency (9th Cir. R. 27-3(c)(ii)):**

The district court's preliminary injunction declares unconstitutional, and enjoins continued enforcement of, the UHA's requirements that a new semiautomatic pistol must have a chamber load indicator, magazine disconnect mechanism, and microstamping capability to be added to the Roster under California Penal Code sections 31910(b)(4)–(6).  The district court granted the preliminary injunction on March 20, 2023 and stayed the injunction for 14 days.  Defendant requests an immediate partial stay of the preliminary injunction to substantially preserve the status quo during this appeal, staying the portion of the order enjoining the chamber load indicator and magazine disconnect mechanism requirements.  This stay will prevent firearm dealers from selling additional semiautomatic pistol models that lack commonsense safety mechanisms to prevent accidental shootings and save lives.  Moreover, it will avoid the administrative burden that would arise if the State is required to allow the retail sale of semiautomatic pistols that "do not have a chamber load indicator [and] a magazine disconnect mechanism . . . but that meet the other requirements of the Unsafe Handgun Act."  Those "other requirements" are administered by the Bureau of Firearms and include firearms safety testing requirements conducted by only two certified labs in the Nation.  A predictable consequence of the district court's order

is a massive influx of requests by firearm manufacturers to allow the retail sale of semiautomatic pistols that have not met the State's safety requirements for over a decade and a half. Defendant respectfully requests that the Court act on this motion as soon as possible, and no later than April 3, 2023.

**(3)   Why the Motion Could Not Have Been Filed Earlier (9th Cir. R. 27-3(c)(iii)):**

The district court issued its decision and granted the preliminary injunction on March 20, 2023. Defendant filed this emergency motion as soon as practicable on March 27, 2023, within the time period permitted under Ninth Circuit Rule 27-2. Counsel for Defendant notified the Court's Emergency Motions Department by telephone and email on March 27, 2023.

**(4)   When and How Counsel Were Notified and Served and Plaintiffs' Position on the Emergency Motion (9th Cir. R. 27-3(c)(iv)):**

On March 27, 2023, undersigned counsel conferred with Plaintiffs' counsel by telephone to inform Plaintiffs that Defendant was planning to appeal the preliminary injunction and seek a partial stay pending appeal from this Court.

**(5)   The Requested Relief Was First Sought in the District Court (9th Cir. R. 27-3(c)(v)):**

Defendant requested that the district court enter a stay pending appeal if it enjoined the challenged UHA requirements in whole or in part. *See* D.Ct. Dkt. 58 at 10, n.7. The district court stayed the preliminary injunction for only 14 days to allow Defendant time to file an appeal and seek a further stay from this Court. The

district court thus "failed to afford" all of "the relief requested" by Defendant, necessitating this emergency motion. Fed. R. App. P. 8(a)(2)(A)(ii). The district court's order did not explain its reasons for denying Defendant's request for a stay pending appeal. Repeating Defendant's request for a partial stay before the district court would be impracticable, *see* Fed. R. App. P. 8(a)(2)(A)(i), and any delay in entering a stay of the preliminary injunction pending this appeal would result in substantial harm.

I declare under penalty of perjury that the foregoing is true.

Dated: March 27, 2023           Respectfully submitted,

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
P. PATTY LI
Supervising Deputy Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General

s/ *Charles J. Sarosy*

CHARLES J. SAROSY
Deputy Attorney General
*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................ 1

Background ................................................................................. 5

    I.    The Unsafe Handgun Act ............................................. 5

    II.   Procedural History ...................................................... 9

Argument ................................................................................. 10

    I.    Equitable Considerations Support a Partial Stay ................... 11

    II.   Defendants Are Likely to Succeed on the Merits .................. 16

        A.    The Second Amendment Allows States to Impose Firearm Safety Requirements ....................................... 16

        B.    Firearm Safety Requirements Are Consistent with a Historical Tradition of Regulation ........................... 21

Conclusion ............................................................................... 25

Statement of Related Cases ....................................................... 26

Certificate of Compliance ......................................................... 27

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Abbassi v. INS*
   143 F.3d 513 (9th Cir. 1998) ...............................................................11

*Antonyuk v. Nigrelli*
   143 S. Ct. 481 (2023)..........................................................................2

*Benisek v. Lamone*
   138 S. Ct. 1942 (2018)......................................................................15

*Coal. for Econ. Equity v. Wilson*
   122 F.3d 718 (9th Cir. 1997) ...............................................................11

*Def. Distributed v. Bonta*
   2022 WL 15524977 (C.D. Cal. Oct. 21, 2022) ................................................20

*Dist. of Columbia v. Heller*
   554 U.S. 570 (2008)..........................................................16, 18, 19, 20

*Doe v. Snyder*
   28 F.4th 103 (9th Cir. 2022) ...............................................................15

*Fiscal v. City and Cnty. of San Francisco*
   158 Cal. App. 4th 895 (2008) .........................................................5, 8

*FTC v. Qualcomm Inc.*
   935 F.3d 752 (9th Cir. 2019) ...............................................................2

*Garcia v. Google, Inc.*
   786 F.3d 733 (9th Cir. 2015) (en banc) ...........................................15

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*
   512 F.3d 1112 (9th Cir. 2008) .............................................................11

*Granata v. Healey*
   603 F. Supp. 3d 8 (D. Mass. 2022) ...............................................7, 12

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Hilton v. Braunskill*
481 U.S. 770 (1987)............................................................................11

*Humane Soc'y of U.S. v. Gutierrez*
558 F.3d 896 (9th Cir. 2009) ..............................................................10

*Leiva-Perez v. Holder*
640 F.3d 962 (9th Cir. 2011) ..............................................................10

*Maryland v. King*
567 U.S. 1301 (2012) (Roberts, C.J., in chambers)............................2

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*
434 U.S. 1345 (1977) (Rehnquist, J., in chambers)...........................11

*New York State Rifle & Pistol Association, Inc. v. Bruen*
142 S. Ct. 2111 (2022)..................................................................*passim*

*Nken v. Holder*
556 U.S. 418 (2009)...............................................................................2

*Oakland Tactical Supply, LLC v. Howell Twp.*
2023 WL 2074298 (E.D. Mich. Feb. 17, 2023)...................................20

*Or. Firearms Fed'n, Inc. v. Brown*
2022 WL 17454829 (D. Or. Dec. 6, 2022)..........................................15

*Pena v. Lindley*
898 F.3d 969 (9th Cir. 2018) .......................................................*passim*

*United States v. Price*
2022 WL 6968457 (S.D. W. Va. Oct. 12, 2022) ................................19

*United States v. Reyna*
2022 WL 17714376 (N.D. Ind. Dec. 15, 2022)............................18, 20

*Winter v. Natural Resources Defense Council, Inc.*
555 U.S. 7 (2008)...........................................................................5, 10

# TABLE OF AUTHORITIES
### (continued)

Page

STATUTES, BILLS, AND REGULATIONS

Assembly Bill No. 1471, 2007–2008 Reg. Sess. (Cal. 2010)....................................6

Assembly Bill No. 2847, 2019-2020 Reg. Sess. (Cal. 2022)
    § 1(c) ........................................................................................................12
    § 1(h) ..........................................................................................................7

Senate Bill No. 15, 1999–2000 Reg. Sess. (Cal. 2001) ............................................5

Senate Bill No. 489, 2003–2004 Reg. Sess. (Cal. 2007) ..........................................6

California Penal Code
    § 16380 ......................................................................................................6
    § 16900 ......................................................................................................6
    § 31910(a) ..................................................................................................6
    § 31910(b) ..................................................................................................6
    §§ 31910(b)(4)–(7) ...........................................................................1, 7, 9
    § 32000 ......................................................................................................1
    § 32000(a) ..................................................................................................5
    §§ 32000(b)(4)–(7) ....................................................................................9
    § 32010.............................................................................................1, 8, 14
    § 32010(a) ..................................................................................................9
    § 32015.............................................................................................1, 14
    § 32015(a) ..................................................................................................6
    § 32015(b) ..................................................................................................9

Haw. Rev. Stat. Ann. § 134-15(a) .........................................................................18

Ill. Comp. Stat. 5/24-3(A)(h) .................................................................................18

Mass. Code Regs §§ 7.01-7.16 ...............................................................................18

Mass. Code Regs. §§ 16.01-16.09 ..........................................................................18

Mass. Code Regs. § 16.05(3), (4) .............................................................................7

Mass. Gen. Laws Chapter 140, §§ 123, 131½, 131¾...............................................18

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

Minn. Stat. §§ 624.712, 624.716...................................................................18

N.Y. Penal Law, § 400.00(12-a)...............................................................18

N.Y. Comp. Codes R. & Regs. Title 9, § 482.1-482.7 ...........................................18

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amendment II.................................................................*passim*

**COURT RULES**

Federal Rules of Appellate Procedure
    Rule 27(a)(2)(B) ...............................................................27
    Rule 32(f) .........................................................................27

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR
A PARTIAL STAY PENDING APPEAL**

## INTRODUCTION

This Court should issue an order partially staying the district court's

preliminary injunction (with respect to the chamber load indicator and magazine

disconnect mechanism requirements) while the Court considers the merits of the

appeal. The partial stay will substantially preserve the status quo, allow the State

to enforce longstanding firearm safety requirements that can save lives and prevent

other injuries, and avert total disruption to a consumer safety regime that has

governed the primary commercial market for semiautomatic pistols for more than a

decade. The district court preliminarily enjoined provisions of the Unsafe

Handgun Act (UHA) contained in California Penal Code sections 31910(b)(4)–(6).

Those provisions require that a new semiautomatic pistol contain a chamber load

indicator (a device that indicates the pistol is loaded), a magazine disconnect

mechanism (a device that prevents the pistol from firing when the magazine is not

inserted), and microstamping capability (a way for law enforcement to trace a shell

casing to the pistol which fired it). To be added to the Roster of Certified

Handguns (the "Roster") and thus eligible for sale on the primary market in

California, a semiautomatic pistol must satisfy those three safety requirements, as

well as other safety requirements Plaintiffs did not seek to enjoin. *See* Cal. Penal

Code §§ 31910, 32000, 32010, 32015. The district court's preliminary injunction

1

would allow the commercial sale of new semiautomatic pistols without any of those public safety features for the first time in at least a decade—even while over 800 handguns, including nearly 500 semiautomatic pistols, are available for sale on the primary commercial market within the State.

The purpose of a stay is to "simply suspend[] judicial alteration of the status quo," *FTC v. Qualcomm Inc.*, 935 F.3d 752, 757 (9th Cir. 2019), "ensuring that appellate courts can responsibly fulfill their role in the judicial process," *Nken v. Holder*, 556 U.S. 418, 427 (2009). Because an injunction barring enforcement or application of a duly enacted statute poses a substantial risk of harming the public interest, courts routinely issue stays pending appeal when a lower court enjoins a statute. *See, e.g.*, *Maryland v. King*, 567 U.S. 1301, 1302-03 (2012) (Roberts, C.J., in chambers); *Antonyuk v. Nigrelli*, 143 S. Ct. 481, 481 (2023).

That interest in preserving the status quo supports a partial stay here. The preliminary injunction would lead to the predictable consequence that manufacturers will, for the first time in a decade, immediately submit hundreds of requests to safety test semiautomatic pistols for retail sale so the arms can be added to the Roster or otherwise allowed to be sold while the preliminary injunction is in effect. While the precise number of likely submissions is unknown, the pool of potential submissions includes every new semiautomatic pistol introduced to commercial markets outside California over the past decade.

This would allow additional models of pistols without proven safety mechanisms to prevent accidental deaths—the chamber load indicator and magazine disconnect mechanism—to be available for retail sale in California, even though manufacturers have conceded that the requirements are practicable. A chamber load indicator is a device that plainly indicates when a round is in the firing chamber by using text (e.g., "loaded") or visible graphics. A magazine disconnect mechanism is a small part of a pistol's frame that prevents the pistol from firing if there is a round in the chamber when the magazine is not inserted. These safety features work to prevent accidental shooting injuries and deaths to anyone who has access to the pistol and to those nearby. They complement the training of a firearm owner, and provide a stopgap for those without training who may nonetheless access the pistol (especially minors) by alerting the user when a pistol is loaded, and prevent accidental shootings that may otherwise result if a user mistakenly believes that a pistol is unloaded because a magazine has not been inserted. Those commonsense safety requirements have not only been proven to save lives, but manufacturers have historically abided by them, adding 34 semiautomatic pistols to the Roster with these features before the microstamping requirement took effect in 2013. D.Ct. Dkt. 56-2 ¶ 11.

The influx of requests to add hundreds of new semiautomatic pistols to the Roster or otherwise make them available for sale while the preliminary injunction

3

remains in effect will result in significant administrative burdens while the merits of Plaintiffs' claims are considered on appeal.

While Defendant expects to defend the microstamping requirement on the merits, this stay request focuses on the chamber load indicator and magazine disconnect mechanism requirements, which are features proven to directly prevent accidental shootings. Microstamping is an important law enforcement tool that can help protect public safety by solving crimes, but it is not a feature designed to prevent accidental discharge or enhance the safety of the arm itself.

Equitable considerations strongly support a stay regarding the chamber load indicator and magazine disconnect requirements. These requirements—which are "safety features designed to limit accidental discharges that occur when someone mistakenly believes no round is in the chamber," *Pena v. Lindley*, 898 F.3d 969, 974 (9th Cir. 2018)—are the type of safety requirements that States have long imposed and that manufacturers can and have met. A partial stay of the preliminary injunction pending appeal will enable newer models of semiautomatic pistols to be sold by firearm dealers in California during the pendency of this appeal, while ensuring that those firearms are equipped with vital safety features.

As to the merits, this case presents the first opportunity for this Court to evaluate the constitutionality of the challenged UHA requirements under the standards established in *New York State Rifle & Pistol Association, Inc. v. Bruen*,

142 S. Ct. 2111 (2022). As discussed further below, the analysis presents important constitutional questions about how to apply *Bruen*'s standards. The district court misapplied those standards, in addition to the well-established test for issuing a preliminary injunction set out in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Under *Bruen*'s proper application, Defendant is likely to succeed on appeal: the Second Amendment does not prohibit a State from imposing commonsense safety requirements that do not prevent law-abiding citizens from exercising the right to keep and bear arms for self-defense. At a minimum, Defendant has presented a substantial case on the merits.

## BACKGROUND

### I. THE UNSAFE HANDGUN ACT

California enacted the UHA in 1999 in response to the proliferation of "low cost, cheaply made handguns known as 'Saturday Night Specials.'" *See Fiscal v. City and Cnty. of San Francisco*, 158 Cal. App. 4th 895, 912 (2008). The UHA took effect in January 2001 and generally prohibits the manufacture or sale of any "unsafe handgun" in California, making a violation punishable by imprisonment in a county jail for not more than one year. Cal. Penal Code § 32000(a); S.B. 15, 1999–2000 Reg. Sess. (Cal. 2001). The UHA does not prohibit the possession of any handgun or other firearm. *See* Cal. Penal Code §§ 31900, *et seq.* The UHA directs that the California Department of Justice maintain a Roster of handguns

5

that have been tested by a certified independent laboratory and meet other public safety requirements. Cal. Penal Code § 32015(a). To be added to the Roster, a revolver must have a safety device and pass the firing and drop-safety tests in an independent laboratory. Cal. Penal Code § 31910(a); *see also id.* §§ 31900, 31905.

Since the UHA's enactment, a semiautomatic pistol must meet those requirements to be added to the Roster. Cal. Penal Code § 31910(b). Over the years, the Legislature has also added additional safety requirements for new semiautomatic pistols, which did not immediately take effect and allowed pistols already on the Roster without such requirements to remain on the Roster. *See* S.B. 489, 2003–2004 Reg. Sess. (Cal. 2007) (chamber load indicator and magazine disconnect requirements); Assemb. B. 1471, 2007–2008 Reg. Sess. (Cal. 2010) (microstamping requirement). Since January 1, 2007, a new semiautomatic pistol must have both a chamber load indicator—"a device that plainly indicates that a cartridge is in the firing chamber"—and a magazine disconnect mechanism—"a mechanism that prevents a semiautomatic pistol that has a detachable magazine from operating to strike the primer of ammunition in the firing chamber when a detachable magazine is not inserted in the semiautomatic pistol." Cal. Penal Code §§ 16380, 16900; *see also* D.Ct. Dkt. 48, Def.'s Exs. 7, 8 (sample photographs of these devices). Chamber load indicators and magazine disconnect mechanisms are

"safety features designed to limit accidental discharges that occur when someone mistakenly believes no round is in the chamber." *Pena*, 898 F.3d at 974.

California is not the only State with such requirements. Massachusetts also has a roster of handguns and requires that any semiautomatic pistol sold by a licensed dealer has a chamber load indicator or magazine disconnect mechanism (though both are not required). 940 Mass. Code Regs. § 16.05(3), (4); *see also Granata v. Healey*, 603 F. Supp. 3d 8, 10-11 (D. Mass. 2022), *appeal docketed*, No. 22-1478 (1st Cir. June 22, 2022). There appear to be several semiautomatic pistols on the Massachusetts roster that have a chamber load indicator or magazine disconnect mechanism or both; more generally, Massachusetts' handgun roster is nearly 30 pages long and lists over 1,000 models. Decl. of Charles Sarosy ¶ 19.

Since May 2013, the UHA also requires new semiautomatic pistols to have microstamping capability, meaning that it can imprint a "microscopic array[] of characters that identify the make, model, and serial number of the pistol onto the cartridge or shell casing of each fired round." *Pena*, 898 F.3d at 974; *see also* Cal. Penal Code § 31910(b)(6). Initially, the law required microstamping in two places on each cartridge; the Legislature recently amended the UHA to require one location per cartridge. Assemb. B. 2847, 2019-2020 Reg. Sess. (Cal. 2022). In making that change, the Legislature credited firearm manufacturers' concession that single-location microstamping is feasible. *Id.* § 1(h). Microstamping is

7

intended to "provide important investigative leads in solving gun-related crimes by allowing law enforcement personnel to quickly identify information about the handgun from spent cartridge casings found at the crime scene." *Fiscal*, 158 Cal. App. 4th at 914.

To be added to the Roster, a firearm manufacturer must send three samples of a handgun that meets the other UHA requirements to a certified independent laboratory, which then performs the required firing and drop-safety tests. Cal. Penal Code §§ 31905, 32010. If the three samples pass these tests, then the laboratory sends one of the tested samples to the Bureau of Firearms, which reviews the sample handgun to ensure it meets the requirements to be added to the Roster. Cal. Penal Code § 32010.

The California Legislature took an incremental approach to rolling out the safety requirements under the UHA. Rather than prohibit the sale of any pistol that does not meet the UHA's requirements, the Legislature elected to impose those requirements on a prospective basis. Under the UHA, semiautomatic pistols that were already on the Roster when the chamber load indicator, magazine disconnect mechanism, and microstamping requirements took effect could remain on the Roster so long as the manufacturers continued to pay the annual Roster listing fee.

Cal. Penal Code §§ 31910(b)(4)-(6), 32015(b); *Pena*, 898 F.3d at 977.[1]  There are

approximately 829 handguns on the Roster, of which nearly 500 are semiautomatic

pistols, including 32 that have both a chamber load indicator and magazine

disconnect mechanism.  D.Ct. Dkt. 54 at 178-79.  There were additional

semiautomatic pistols on the Roster with those two safety features that were added

between 2007 and 2013, but manufacturers failed to pay the annual listing fee.

D.Ct. Dkt. 56-2 ¶¶ 8-10.

Off-Roster handguns may be purchased by certain law enforcement agencies

and officers if certain requirements are met, and citizens who are not law

enforcement members may acquire off-Roster handguns through private party

transactions.  Cal. Penal Code §§ 32000(b)(4), (6)-(7), 32110(a).

## II.  PROCEDURAL HISTORY

Plaintiffs brought Second Amendment challenges to the entire UHA.  D.Ct.

Dkt. 1, 17.  After filing an amended complaint in September 2022, Plaintiffs

waited two months before filing a motion for preliminary injunction in November

2022.  D.Ct. Dkt. 23.  In the briefing, Plaintiffs confirmed that they sought to

---

[1] For each new semiautomatic pistol added to the Roster, three semiautomatic
pistols without a chamber load indicator, magazine disconnect mechanism, and
microstamping are removed from the Roster.  Cal. Penal Code § 31910(b)(7).  This
would assure that over time, pistols meeting these requirements become a
proportionally larger share of the market available for purchase.

enjoin only the chamber load indicator, magazine disconnect mechanism, and microstamping requirements.  D.Ct. Dkt. 34 at 7.

On March 20, 2023, the court issued its decision and granted the motion for a preliminary injunction.  The district court concluded that the three challenged requirements likely violate the Second Amendment because they restrict the ability to purchase "state-of-the-art" semiautomatic pistols; that the inability to purchase such arms constitutes irreparable harm; and that such harm outweighs any public interest in not granting injunctive relief.  *See generally* D.Ct. Dkt. 60.  Defendant filed a notice of appeal on March 27, 2023, and this motion to partially stay the preliminary injunction that same day.

## ARGUMENT

A movant seeking a stay pending appeal "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest."  *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).  To obtain a stay, however, the party "need not demonstrate that it is more likely than not that they will win on the merits" or that "ultimate success is probable."  *Leiva-Perez v. Holder*, 640 F.3d 962, 966-67 (9th Cir. 2011).  Rather, a "substantial case on the merits" or "serious legal questions" will suffice "so long as the other factors support the stay."  *Id.* at 967-68 (quoting

*Hilton v. Braunskill*, 481 U.S. 770, 778 (1987) and *Abbassi v. INS*, 143 F.3d 513 (9th Cir. 1998)).  Defendants satisfy those standards for a partial stay pending appeal.

## I.  EQUITABLE CONSIDERATIONS SUPPORT A PARTIAL STAY

The equitable factors weigh in favor of a partial stay, preserving the chamber load indicator and magazine disconnect mechanism requirements while the Court considers the merits of the appeal.  As a general matter, the "public interest" is harmed where, as here, a lower court invalidates and enjoins a duly enacted statute. *See*, *e.g.*, *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008) ("The public interest may be declared in the form of a statute").  And as the Supreme Court and this Court have often recognized, a State necessarily "suffers irreparable injury whenever an enactment of its people or their representatives is enjoined."  *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see also New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers).

Those considerations have particular significance in this case because the chamber load indicator and magazine disconnect mechanism requirements have been in effect for 16 years, and manufacturers have shown that they are capable of meeting these life-saving requirements.  Without the partial stay requested here, the preliminary injunction would allow new semiautomatic pistols to sold while the

preliminary injunction remains in effect, which would be contrary to the Legislature's view that the chamber load indicator and magazine disconnect mechanism requirements are "critical safety standards" that "are capable of saving many lives by preventing unintentional shootings." Assemb. B. 2847, 2019-2020 Reg. Sess. (Cal. 2022), § 1(c). Firearms containing these devices help to thwart real-world tragedies, including accidents where minors and others inadvertently shoot their family members because they do not realize that a handgun has a round in the chamber. D.Ct. Dkt. 48, Def.'s Ex. 12 at 17-18 (federal government study describing examples of such accidents). These safety features have been proven to prevent such tragedies, and are especially important when handgun owners do not securely store their handgun. D.Ct. Dkt. 54 at 198.

History demonstrates that firearms manufacturers are capable of satisfying both of these requirements. Five manufacturers added 34 semiautomatic pistols with these features to the Roster between 2007 to 2013. D.Ct. Dkt. 56-2 ¶ 11. Moreover, manufacturers make semiautomatic pistols with a chamber load indicator or magazine disconnect mechanism to comply with similar requirements in Massachusetts. *Granata*, 603 F. Supp. 3d at 16-17. A partial stay of the injunction against the chamber load indicator and magazine disconnect mechanism requirements would substantially preserve the status quo and protect the public

12

while this appeal proceeds on an expedited basis, consistent with the Legislature's intent in enacting those requirements.

While there are semiautomatic pistols on the Roster that currently do not satisfy the chamber load indicator and magazine disconnect mechanism requirements, that is because the Legislature elected to take an incremental approach to regulation and to apply those requirements on a prospective basis only. The Legislature has relied on data about the important safety benefits of those requirements to express its judgment that all new semiautomatic pistols should alert users that a pistol is loaded and should ensure that a round cannot be discharged without a magazine. Allowing the injunction to take effect would expand the number of semiautomatic pistols lacking these safety features that are available for retail sale in California, and would increase safety risks to the public.

The lack of a partial stay would also result in significant administrative disruption. Because no new semiautomatic pistol has been added to the Roster since the microstamping requirement took effect in 2013, firearm manufacturers could seek to add to the Roster any semiautomatic pistol introduced on the market in other States over the past decade. That would require the Bureau of Firearms to ensure that the arms meet other UHA requirements, including that they have a positive manually operated safety device and that three samples passed the drop-safety test (in which the pistol is dropped in six different ways to ensure it does not

13

fire from simple impact) and firing test (in which the pistol must fire 600 rounds without minimal malfunctions and no cracking in the pistol). Cal. Penal Code §§ 31900-31910, 32010. Those tests are administered by only two certified independent laboratories. After passing these tests, the laboratory sends one of the samples to the Bureau of Firearms, which reviews the arm for compliance, and processes the application and fee before adding it to the Roster. *Id.* at §§ 32010, 32015.

At the same time, Plaintiffs would suffer no irreparable harm by the issuance of a partial stay. As the district court acknowledged, Plaintiffs may purchase any of the 832 handguns currently on the Roster, including nearly 500 semiautomatic pistols that are currently approved for commercial sale. D.Ct. Dkt. 60 at 6; *see also* D.Ct. Dkt. 54 at 178-79. And allowing the retail sale of handguns with a chamber load indicator and magazine disconnect mechanism would expand the range of handguns available for purchase, further demonstrating that Plaintiffs would not be irreparably harmed by the partial stay. Plaintiffs did not claim, nor did the district court find, that Plaintiffs were unable to purchase or continue possessing semiautomatic pistols to defend themselves. And this Court previously observed that these safety features "place almost no burden on the physical exercise of Second Amendment rights." *Pena*, 898 F.3d at 978.

14

The only "irreparable harm" identified by the district court was the UHA's supposed intrusion on a Second Amendment right—despite the fact that there are nearly 500 semiautomatic pistols that are readily available for self-defense. D.Ct. Dkt. 60 at 18-19. With such ample availability, there is no immediate irreparable harm that can support a preliminary injunction. Indeed, each of the plaintiffs who testified at the evidentiary hearing admitted they possessed at least a dozen firearms and several semiautomatic pistols that were operable. D.Ct. Dkt. 56 at 17. The district court failed to explain why such weapons "would be so ineffective for use in self-defense as to constitute immediate and irreparable harm." *Or. Firearms Fed'n, Inc. v. Brown*, 2022 WL 17454829, at *19 (D. Or. Dec. 6, 2022). Showing a likelihood of success on the merits alone is not enough to obtain injunctive relief, but that is essentially what the district court allowed. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018) ("[A] preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits."). Moreover, because Plaintiffs sought an injunction that would change the status quo, they had the burden to show the "law and facts clearly favor" their position and "extreme or very serious damage will result" from the lack of an injunction. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc); *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022). They failed to do so.

15

## II.   DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS

Defendants are also likely to succeed on the merits of their appeal.  At a minimum, the record below presents a substantial case on the merits supporting a partial stay pending appeal as this Court works through the important constitutional questions presented in this case.

### A.   The Second Amendment Allows States to Impose Firearm Safety Requirements

In *Bruen*, the Supreme Court reaffirmed that the Second Amendment is not a "regulatory straightjacket."  *Bruen*, 142 S. Ct. at 2133.  The Court also reiterated that the Second Amendment does not protect an unfettered right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Id.* at 2128 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).  Indeed, *Bruen* did not "decide anything about the kinds of weapons that people may possess."  *Id.* at 2157 (Alito, J., concurring).  And Justice Kavanaugh, joined by Chief Justice Roberts, wrote separately to underscore the "limits of the Court's decision," explaining that the Second Amendment "allows a 'variety' of gun regulations," and reiterating *Heller*'s pronouncement that one of the presumptively lawful category of laws includes those "imposing conditions and qualifications on the commercial sale of arms."  *Id.* at 2161-62 (Kavanaugh, J., concurring).

In identifying what conduct the Second Amendment does protect, the Court in *Bruen* announced that the analysis is one "centered on constitutional text and

16

history." *Bruen*, 142 S. Ct. at 2128-29. Under this text-and-history approach, courts must first determine that "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2129-30. If so, "the Constitution presumptively protects that conduct," and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130. To satisfy this burden, a government must identify a "well-established and representative historical *analogue*"—not a "historical *twin*" or "dead ringer"—to the challenged law that is "relevantly similar" according to "two metrics": "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. Thus, the historical comparator must have "impose[d] a comparable burden on the right of armed self-defense" that is also "comparably justified." *Id*.

Under that text-and-history approach, *Bruen* does not prohibit States from imposing reasonable firearm safety regulations because "the Second Amendment's plain text" does not require the availability of firearms without safety features. 142 S. Ct. at 2129-30. Like a host of other laws enacted in several states imposing handgun design safety requirements, the chamber load indicator and magazine disconnect mechanism requirements merely specify certain safety features that a semiautomatic pistol must have before it can be sold by a firearms dealer in

17

California.[2]  Indeed, Plaintiffs did not seek to enjoin other requirements in the UHA requiring, for example, drop-safety testing or firing testing at an independent laboratory.  And manufacturers have demonstrated that they can manufacture semiautomatic pistols satisfying the chamber load indicator and magazine disconnect mechanism requirements, as reflected in the nearly three dozen semiautomatic pistols with these safety features added to the Roster between 2007 to 2013 and the continued listing of 32 such pistols on the Roster.

Proven safety requirements that manufacturers acknowledge they can meet do not infringe any textual right to "keep" and "bear" protected "Arms," U.S. Const. amend. II.  *See Bruen*, 142 S. Ct. at 2134 (quoting *Heller*, 554 U.S. at 592). The chamber load indicator and magazine disconnect mechanism requirements do not impede any person's ability to purchase or possess a handgun.  *See United States v. Reyna*, 2022 WL 17714376, at *4 (N.D. Ind. Dec. 15, 2022) (defining the proposed course of conduct as "possession of a firearm with an obliterated serial

---

[2] *See, e.g.*, Mass. Gen. Laws ch. 140, §§ 123, 131½, 131¾, 501 Mass. Code Regs §§ 7.01-7.16, & 940 Mass. Code Regs. §§ 16.01-16.09 (drop safety, firing, and melting point testing, and a chamber load indicator or magazine disconnect mechanism); N.Y. Penal Law § 400.00(12-a), & N.Y. Comp. Codes R. & Regs. tit. 9, § 482.1-482.7 (drop safety, firing, and melting point testing); Haw. Rev. Stat. Ann. § 134-15(a) (melting point testing); 720 Ill. Comp. Stat. 5/24-3(A)(h) (melting point testing); Minn. Stat. §§ 624.712, 624.716 (melting point testing).

number" and not more generally as "mere possession [of a firearm]").[3]  There are

currently over 800 handguns individuals may purchase and likely numerous others

that could meet the chamber load indicator and magazine disconnect mechanism

requirements.  And because the challenged UHA requirements "apply only to

manufacturers and sellers [and] do not implicate an individual's right of

possession," *United States v. Price*, 2022 WL 6968457, at *2-3 (S.D. W. Va. Oct.

12, 2022), they fall within the presumptively lawful category of "laws imposing

conditions and qualifications on the commercial sale of arms."  *Bruen*, 142 S. Ct.

at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626).

The district court concluded that the text of the Second Amendment protects

the right to "purchas[e] state-of-the-art handguns on the primary market."  D.Ct.

Dkt. 60 at 11.  But this Court has properly recognized that there is no

"constitutional right to purchase a particular handgun."  *Pena*, 898 F.3d at 973.

While that decision applied the two-step analysis abrogated in *Bruen*, its analysis

about the scope of the Second Amendment remains persuasive.  Moreover, the

district court did not even conclude that the purported right to acquire state-of-the-

art handguns (without passing safety requirements) falls within the Second

Amendment's plain text, but rather held that the conduct fell within some

---

[3] And *Bruen* itself recognized that States may impose firearms safety training
requirements.  142 S. Ct. at 2138, n.9.

"attendant right" to purchase firearms.  D.Ct. Dkt. 60 at 11.  In other words, the district court "seemingly perceive[d] a penumbra" of rights captured by the Second Amendment, which is "quite-clearly not a 'plain text' analysis."  *Def. Distributed v. Bonta*, 2022 WL 15524977, at *4 (C.D. Cal. Oct. 21, 2022); *Oakland Tactical Supply, LLC v. Howell Twp.*, 2023 WL 2074298, at *4 (E.D. Mich. Feb. 17, 2023) (declining to "read into the" Second Amendment any "ancillary or corollary protection"), *appeal docketed*, No. 23-1179 (6th Cir. Mar. 1, 2023).  As the high court has long recognized, the Second Amendment is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *Heller*, 554 U.S. at 626, a limitation that "comes from the text of the Second Amendment" and thus must be considered in the plain text analysis.  *Reyna*, 2022 WL 17714376, at *4.  Moreover, the district court assumed, without pointing to any evidence in the record, that off-Roster "state-of-the-art" semiautomatic pistols are more "durable, reliable, affordable, and possibly safer" than those on the Roster.  D.Ct. Dkt. 60 at 18.  Plaintiffs presented no evidence supporting this conclusion; instead, they conceded that the pistols have "primarily ergonomic" enhancements and that the "size and functionality . . . is essentially the same" as on-Roster pistols.  D.Ct. Dkt. 50 at 77; D.Ct. Dkt. 57-2 ¶ 7.

### B. Firearm Safety Requirements Are Consistent with a Historical Tradition of Regulation

In any event, firearm safety regulations are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. There is a long history of enacting firearm regulations to protect the public from defective or poorly manufactured firearms, and the chamber load indicator and magazine disconnect mechanism requirements are part of that tradition. D.Ct. Dkt. 56-3 ¶¶ 23, 31.

Defendant identified firearm and ammunition inspection (or "proving") laws passed in six states in the early 1800s as particularly relevant examples. D.Ct. Dkt. 56 at 13. These laws required that every firearm or casket of gunpowder be inspected and stamped by a government inspector prior to their commercial sale. The two firearm inspection laws—one of which was in Massachusetts, the leading small arms producer at the time—required every musket and pistol barrel to be examined, test fired, and then stamped with the government inspector's initials before it could be sold to the public. *Id.* Five states adopted similar laws for ammunition, requiring government inspectors to inspect gunpowder to ensure it met certain quality standards and then stamp the gunpowder cask with the inspector's initials before being sold to the public. *Id.* Defendant also identified several laws in Massachusetts, Maine, other states, and in some localities that regulated the storage of weapons and gunpowder to reduce harm to the public and

21

decrease the risks of fire, accidental discharge, and explosion arising from the corrosive nature of gunpowder.  *Id.* at 14.[4]

These three categories of historical laws share the same "how" (imposing conditions on commercial gun sales) and the same "why" (ensuring safety and functionality of commercially sold firearms) as the chamber load indicator and magazine disconnect mechanism requirements.  But the district court disagreed, applying an overly narrow view of how to conduct the analogical inquiry.  The district court reasoned that the analogues were intended to protect only the firearm user and to prevent fires, and that they achieved these goals by "confirming the basic operating features of a firearm" and inspecting every firearm.  D.Ct. Dkt. 60 at 13-14.  On the other hand, the district court characterized the chamber load indicator and magazine disconnect mechanism requirements as "alter[ing] the operation of an otherwise well-manufactured handgun."  *Id.* at 14.  That misunderstands how these safety features function: they *are* part of the "basic operating features of a firearm" because both are involved in the firearm's loading process—the chamber load indicator notifies the user the firearm is loaded and the magazine disconnect mechanism prevents the firearm from firing when a magazine

---

[4] *See generally* Br. of Defendants-Appellees, *Granata v. Campbell*, No. 22-1478 (1st Cir. Jan. 30, 2023), 2023 WL 1794480, at *37-51; Amicus Br. of Giffords Law Center, *Granata v. Campbell*, No. 22-1478 (1st Cir. Jan. 30, 2023), 2023 WL 2062850, at *21-28.

is not inserted.  Contrary to the district court's view of these requirements, they can prevent injury to the firearm user as well as others.

The district court also viewed the burden imposed by the historical analogues to be significantly less than the burden imposed by the UHA's requirements.  But in its burden analysis, the district court relied on an incorrect assertion that manufacturers do not make semiautomatic pistols with chamber load indicators or magazine disconnect mechanisms.  D.Ct. Dkt. 60 at 15.  In fact, five manufacturers made dozens of pistols with these requirements after they took effect.  D.Ct. Dkt. 56 at 9-10.  It is true, as the district court observed, that "not a single new model of semiautomatic handgun has been added to the Roster since the microstamping requirement was implemented in May 2013."  D.Ct. Dkt. 60 at 17-18.  But the court did not separately assess—as the State requested—the burden imposed by the chamber load indicator and magazine disconnect mechanism requirements irrespective of the microstamping requirement.  And segregated in analysis, the burden that those two safety features impose on the right of armed self-defense is less than the burden imposed by the relevantly similar historical analogues.  The district court also wholly failed to address this Court's prior conclusion that the chamber load indicator and magazine disconnect mechanism requirements "place almost no burden on the physical exercise of Second Amendment rights."  *Pena*, 898 F.3d at 978.  And it failed to recognize that the

23

historical laws and two UHA requirements are comparably justified because they all seek to reduce the dangers arising from firearms and ammunition that do not function or are not used in line with their intended purpose.

At bottom, history demonstrates that States may impose practicable safety requirements to protect the public from accidental shootings. The chamber load indicator and magazine disconnect mechanism requirements are consistent with the historical understanding, as well as the text, of the Second Amendment. At a minimum, Defendant has shown a substantial question on the merits warranting a partial stay while the State makes its case on appeal.

## CONCLUSION

The Court should partially stay the district court's order concerning the chamber load indicator and magazine disconnect mechanism requirements. If necessary, the Court should issue an administrative stay before April 3, 2023, to preserve the status quo while the Court considers this motion.


Dated:  March 27, 2023                    Respectfully submitted,


                                          ROB BONTA
                                          Attorney General of California
                                          THOMAS S. PATTERSON
                                          Senior Assistant Attorney General
                                          P. PATTY LI
                                          Supervising Deputy Attorney General
                                          MARK R. BECKINGTON
                                          Supervising Deputy Attorney General

                                          s/ *Charles J. Sarosy*

                                          CHARLES J. SAROSY
                                          Deputy Attorney General
                                          *Attorneys for Defendant-Appellant*

## STATEMENT OF RELATED CASES

Defendant is not aware of any related cases.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing emergency motion complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3(2) because it consists of 5,536 words, excluding the documents listed at Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f). This emergency motion complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: March 27, 2023        s/ *Charles J. Sarosy*

## CERTIFICATE OF SERVICE

Case Name:  ***Lance Boland, et al v. Rob Bonta, et al***   Case No.: **23-55276**

I hereby certify that on <u>March 27, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR A PARTIAL STAY OF THE PRELIMINARY INJUNCTION
PENDING APPEAL AND FOR AN INTERIM ADMINISTRATIVE
STAY ENTERED BEFORE APRIL 3, 2023**

I certify that all participants in the case are registered CM/ECF users and that service will be electronically accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

Executed on <u>March 27, 2023</u>, at San Francisco, California.


| Vanessa Jordan | *s/ Vanessa Jordan* |
|:---:|:---:|
| Declarant | Signature |