No. 23-55276

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

LANCE BOLAND; MARIO SANTELLAN; RENO MAY; JEROME SCHAMMEL; AND CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED,

*Plaintiffs-Appellees*,

*v.*

ROB BONTA, Attorney General of the State of California,

*Defendant-Appellant*.

On Interlocutory Appeal from the United States District Court for the Central District of California

No. 22-cv-1421-CJC-ADS
The Honorable Cormac J. Carney

# BRIEF FOR AMICI CURIAE IDAHO, ALABAMA, ALASKA, ARKANSAS, FLORIDA, GEORGIA, INDIANA, IOWA, KANSAS, KENTUCKY, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, UTAH, VIRGINIA, WEST VIRGINIA, AND WYOMING SUPPORTING PLAINTIFFS-APPELLEES AND AFFIRMANCE


RAÚL R. LABRADOR
*Attorney General*

Idaho Office of the Attorney General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
Josh.Turner@ag.idaho.gov

THEODORE J. WOLD
*Solicitor General*

JOSHUA N. TURNER
*Deputy Solicitor General*
TIMOTHY J. LONGFIELD
*Deputy Attorney General*

## TABLE OF CONTENTS

INTEREST OF AMICI STATES ........................................ 1

SUMMARY OF ARGUMENT ........................................ 1

ARGUMENT ........................................ 3

I. The Second Amendment Codifies a Pre-Existing Right that Belongs to "the People" and Necessarily Restricts State Regulatory Discretion ........................................ 3

II. The UHA is Not a "Reasonable" Public Safety Law—It's a Disguised Handgun Ban ........................................ 6

III. The UHA Unconstitutionally Infringes the Right to Keep and Bear Arms ........................................ 7

CONCLUSION ........................................ 122

## TABLE OF AUTHORITIES

### CASES

*Board of Airport Commissioners of City of Los Angeles v. Jews for Jesus, Inc.*,
482 U.S. 569 (1987) ........ 5

*D.C. v. Heller*,
554 U.S. 570 (2008) ........ *passim*

*Duncan v. Bonta*,
19 F.4th 1087 (9th Cir. 2021) ........ 5

*Frein v. Pa. State Police*,
47 F.4th 247 (3d Cir. 2022) ........ 10

*Jackson v. City and County of San Francisco*,
746 F.3d 953 (9th Cir. 2014) ........ 10

*McDonald v. Chicago*,
561 U.S. 742 (2010) ........ 5

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
142 S. Ct. 2111 (2022) ........ 2

*Schneider v. State of New Jersey*,
308 U.S. 147 (1939) ........ 9

*Specht v. Patterson*,
386 U.S. 605 (1967) ........ 5

*Teixeira v. County of Alameda*,
873 F.3d 670 (9th Cir. 2017) ........ 10, 12

*United States v. Alvarez*,
810 F.2d 879 (9th Cir. 1987) ........ 5

*Virginia v. Moore*,
553 U.S. 164 (2008) ........ 5

**RULES**

Federal Rule of Appellate Procedure 29(a)(2) ........................................ 4

**OTHER AUTHORITIES**

2 Collected Works of James Wilson ........................................ 3

The Federalist No. 44 (James Madison) ........................................ 10

U.S. CONST. amend. II ........................................ 1, 7, 9

## INTEREST OF AMICI STATES

The States of Idaho, Alabama, Alaska, Arkansas, Florida, Georgia, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Utah, Virginia, West Virginia, and Wyoming respect the right of the people to keep and bear Arms. They agree with the Constitution that the right protected by the Second Amendment is "necessary to the security of a free State." U.S. CONST. amend. II. For this reason, Amici States have taken unapologetic stands to defend the Second Amendment.

California, on the other hand, has enforced its Unsafe Handgun Act to unabashedly infringe on fundamental liberties that belong to all Americans. The Act also encourages other governments to experiment with the people's rights. Unless enjoined, its eroding impact will not be confined to California.

In many regards, States are important laboratories of democracy. But when it comes to the Bill of Rights, States are not free to experiment. All States must respect and defend the rights of Americans. Less liberty in California means less liberty for all Americans. Amici States, thus, have a keen interest to nip such incursions in the bud.

Accordingly, Amici States file this brief in support of Plaintiffs-Appellees under Federal Rule of Appellate Procedure 29(a)(2).

## SUMMARY OF ARGUMENT

The district court's injunction is well supported and should be affirmed in full. It faithfully applied the analysis required by *New York State Rifle & Pistol Association, Inc.*

*v. Bruen*, 142 S. Ct. 2111 (2022). California's Unsafe Handgun Act burdens conduct that falls squarely within the plain text of the Second Amendment. *See id.* at 2130-31. And California has not come close to meeting its burden to identify a "well-established and representative historical analogue" justifying the UHA. *See id.* at 2133. The UHA cannot stand.

California's arguments on appeal reflect a basic misunderstanding of the Second Amendment. It believes its regulations should be presumed lawful. But the Second Amendment protects a natural right and warns governments with an "unqualified command" not to infringe on that right. *Id.* at 2130. Thus, California's justifications for the law largely fail to meet the text of the Amendment.

But California's justifications of the UHA as a "reasonable" public safety law also fail. The law is supposedly designed to protect the public from unsafe handguns. California's chosen means? Ban all modern handguns in common use over the last decade and limit the public to grandfathered handguns that become more and more outdated and outmoded by the day. There's no logic to protecting the public from "unsafe" handguns by banning the newest ones and forcing them to buy the oldest ones.

The UHA, however, is not subject to means-end scrutiny. It is subject to *Bruen*'s framework. And although California would like to avoid that analysis, it applies and requires the UHA to be enjoined. California's attempts to exempt the UHA from the *Bruen* analysis try to get the Court to ask the wrong question. The threshold question is not, as California and its Amici argue, whether the UHA leaves "law-abiding citizens

with an array of options to exercise their Second Amendment right," Dkt. #18, ID 12710013, at 24, or whether the UHA is a "presumptively lawful regulatory measure," Dkt. #11, ID 12704847, at 39-42; Dkt. #18, ID 12710013, at 22. The question is simply whether the UHA regulates conduct covered by the "plain text" of the Second Amendment. *Bruen*, 142 S. Ct. at 2126. It does, so it is presumptively unlawful. *Id.* And California has failed to overcome the presumption.

## ARGUMENT

### I. The Second Amendment Codifies a Pre-Existing Right that Belongs to "the People" and Necessarily Restricts State Regulatory Discretion.

California's anti-gun regime reflects a misunderstanding of the Second Amendment. That Amendment did not grant Americans anything they didn't already possess. *D.C. v. Heller*, 554 U.S. 570, 592 (2008). It instead recognizes and reminds governments—state and federal alike—that "the people" have a "*pre-existing*" right to keep and bear arms. *Id.*; *see also id.* at 580-81 (explaining that "the people" protected by the Second Amendment "refers to a class of persons who are part of a national community" (citation omitted)). Keeping and bearing arms is a natural right; it is pre-political; and it belongs individually to all people as Americans. *See id.* at 585; *see also* 2 Collected Works of James Wilson 1142, and n.x (K. Hall & M. Hall eds. 2007) (describing the arms-bearing right as "the great natural law of self preservation"—the right to defend "one's person or house"). States did not confer it, and they cannot limit its core guarantee.

Wilson at 1142 (The right to bear arms "cannot be repealed, or superseded, or suspended by any human institution.").

California and its band of Amici beat the police power drum to justify its restriction of the right. They say, for instance, that the "Second Amendment does not inhibit States from imposing reasonable safety requirements [on] firearms," Dkt. #11, ID 12704847, at 26, and that States enjoy "great latitude under their police powers" to regulate everything from furniture to firearms, Dkt. #18, ID 12710013, at 9-10. But guns are more protected than other consumer goods, which means "certain policy choices" related to them are "off the table." *Heller*, 554 U.S. at 636. So while California may prefer a citizenry with far fewer arms options, the Second Amendment "takes out of the hands of government . . . the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Id.* at 634. Put simply, California cannot take a chisel to the Second Amendment and sculpt its own, narrower version of the right.

California's regulatory regime also problematically creates varying Second Amendment zones. In most of the country, Americans can freely acquire the handguns that are "in common use at the time," as is their constitutional right. *Id.* at 627. But in California, Americans are barred from purchasing such arms and instead limited to buying hypothetical handguns that have yet to hit the market. That turns the right to purchase "the sorts of weapons . . . in common use at the time" on its head—restricting citizens to weapons so uncommon they aren't even made or sold. *Id.*

The consequence is a proliferation of zones where the Second Amendment is made "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 142 S. Ct. at 2156 (quoting *McDonald v. Chicago*, 561 U.S. 742, 780 (2010)); *see also Duncan v. Bonta*, 19 F.4th 1087, 1172 (9th Cir. 2021) (en banc) (VanDyke, J., dissenting) (observing that the Second Amendment "is subject to a widely varying patchwork quilt of state and local restrictions and bans that would be an embarrassment for any other constitutional right"). That much is apparent from the handful of Amici jurisdictions supporting California's position. They too are willing to pick apart the Second Amendment by "enact[ing] and enforce[ing]" regulations "like California's." Dkt. #18, ID 12710013, at 9.

But a citizen's ability to exercise his constitutional rights "should be uniform throughout the nation." *United States v. Alvarez*, 810 F.2d 879, 886 (9th Cir. 1987). There aren't "First Amendment Free Zone[s]" across the states, *Board of Airport Commissioners of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987); there can't be states with a search-and-seizure open season, *Virginia v. Moore*, 553 U.S. 164, 172 (2008); and there're no partial due process courts in this country, *Specht v. Patterson*, 386 U.S. 605, 609-10 (1967). Neither can there be places where the Second Amendment is given "second-class" status. *Bruen*, 142 S. Ct. at 2156. There is no "police power" exception to the Second Amendment's unqualified command. *Id.* at 2126.

## II. The UHA is Not a "Reasonable" Public Safety Law—It's a Disguised Handgun Ban.

California and its Amici want this Court to sidestep *Bruen*'s historical analysis. Dkt. #11, ID 12704847, at 29; Dkt. #18, ID 12710013, at 14. They ***really*** don't want the Court to compare the UHA to traditional firearms regulations, knowing California cannot carry its burden and show that the UHA regulates conduct beyond "the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127. So they spend most of their briefing spinning the UHA as a "reasonable" handgun safety law that's harmless to the right to keep and bear arms. Dkt. #11, ID 12704847, at 26; Dkt. #18, ID 12710013, at 9. But the UHA is neither "reasonable" nor anodyne.

There are many adjectives that could describe the UHA, but reasonable is not among them. California justifies the UHA as a "public safety requirement" that is needed to prevent gun manufacturers from victimizing consumers with unsafe handguns. *See, e.g.,* Dkt. #11, ID 12704847, at 32-35. The government Amici in support of the UHA warn that enjoining the Act poses a dire "threat[]" that will "unravel the limited number of laws that incentivize smart, safe, and traceable handguns." Dkt. #18, ID 12710013, at 13. But the problem is that both also stress that the UHA does nothing to prevent people from buying handguns ***without*** the supposed "public safety requirements." *See, e.g.,* Dkt. #11, ID 12704847, at 33 (emphasizing the 800 or so handguns on the roster that do not meet the UHA's requirements prove that the requirements "do not impede any person's ability to purchase or possess a handgun"); Dkt. #18, ID

12710013, at 14 (claiming the UHA poses no Second Amendment issue because "the gun industry can continue to sell hundreds of alternative handguns to Californian consumers"). It's certainly a fuzzy form of logic that says the law must simultaneously regulate and not regulate X to ensure public safety.

The reason for the dissonance becomes clear considering the actual purpose of the UHA. California is boiling Second Amendment frogs. Slowly, but surely, "lawful" handguns in California will either become uselessly outdated and outmoded or dwindle into nonexistence. It's just a matter of time and math under the UHA. Public safety is a pretext for California's real goal to drastically restrict the availability of handguns. And that aim is anything but harmless for Second Amendment rights.

All of that to say, whether the law is "reasonable" asks the wrong question. California incorrectly thinks that if it can convince this Court that the UHA is a legitimate public safety measure, then the law will survive Second Amendment scrutiny. But even the best-intentioned firearm regulations bolstered by sound public policy and safety studies must give way to "the right of the people to keep and bear Arms." U.S. CONST. amend. II; *see also Bruen*, 142 S. Ct. at 2126 n.3 ("[T]he right to keep and bear arms . . . is not the only constitutional right that has controversial public safety implications.").

## III. The UHA Unconstitutionally Infringes the Right to Keep and Bear Arms.

The district court and Appellees explain well why the UHA is unconstitutional. Their *Bruen* analysis need not be repeated. Amici States offer some supplemental observations in response to specific arguments by California and its Amici supporters.

***Bruen's First Step.*** California and its Amici both invoke *Heller* in arguing that the UHA does not burden Second Amendment protected conduct and so avoids any scrutiny under *Bruen*'s second step. First, they say that as long as people can purchase ***some*** handguns—no matter how outdated or outmoded—*Heller* leaves government free to regulate. Dkt. #11, ID 12704847, at 35. Second, they say that *Heller* created a presumption of constitutionality for all commercial regulations. Dkt. #11, ID 12704847, at 39-42; Dkt. #18, ID 12710013, at 13. On both fronts, *Heller* shows just the opposite.

Absent a blanket ban of all firearms, a regulating government will always be able to say that there is no right to purchase a "particular" firearm and people remain free to exercise their arms-bearing right by selecting a different firearm. Dkt. #11, ID 12704847, at 13. That was true in *Heller*, where the District of Columbia only banned handguns but allowed possession of other firearms. *Heller*, 554 U.S. at 629. And it is true in California, which bans all modern handguns on the market but allows possession of certain grandfathered handguns—for now. The District of Columbia raised the same argument in *Heller* that California raises here, and the Supreme Court's response applies with equal force now: "It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed." *Id.*

California's second argument fares no better. The *Heller* decision did not exempt "commercial" regulations from *Bruen*'s yet-to-be-articulated framework. California is

flat-out wrong to argue that commercial firearm regulations *per se* fall outside the activity protected by the Second Amendment. The only "presumption" the Supreme Court recognizes for Second Amendment purposes is that "the Constitution presumptively protects" conduct falling within the ambit of the Amendment's plain text. *Bruen*, 142 S. Ct. 2111, 2129-30. Consistent with *Heller*'s recognition, certain regulatory measures may have an easier go of it under *Bruen*'s second step—but they still need to survive the second step, burden and all.

Both arguments are further instances of California's misunderstanding of the Second Amendment. They treat the Second Amendment as a conferred right that government can tinkered with. But keeping and bearing arms is a pre-political and natural right that "shall not be infringed." U.S. CONST. amend. II. California is no freer to limit the purchase of handguns than it is to limit the public spaces for speech. *See Schneider v. State of New Jersey*, 308 U.S. 147, 163 (1939) (rejecting similar argument that a Los Angeles ordinance was lawful because its "operation is limited to streets and alleys and leaves persons free to distribute printed matter in other public places"). Its ability to regulate in the Second Amendment space should be difficult. That is why the *Bruen* analysis is so demanding. And it is why California is manufacturing exemptions and presumptions to avoid defending its law.

So for purposes of *Bruen*'s first step, the Second Amendment unquestionably protects the very conduct the UHA prohibits. *See Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017); *Jackson v. City and County of San Francisco*, 746 F.3d 953, 968 (9th

Cir. 2014). The Second Amendment protects a citizen's right to acquire weapons that are "in common use at the time." *Heller*, 554 U.S. at 627; The Federalist No. 44 (James Madison) ("No axiom is more clearly established in law, or in reason, than that wherever the end is required, the means are authorized[.]"). But the UHA prohibits citizens from purchasing "common" handguns. And just because citizens may be able to acquire the firearms through some other means matters not. The question at *Bruen*'s first step is whether the challenged law infringes upon a citizen's right to acquire handguns "in common use at the time"—not whether the regulation obliterates the right. *Bruen*, 142 S. Ct. 2111, 2128-30; *see also Frein v. Pa. State Police*, 47 F.4th 247, 254 (3d Cir. 2022) (explaining that to "infringe" on a fundamental right broadly includes instances of government burden or hinderance). The UHA infringes on the right to keep and bear arms, and the degree of infringement is irrelevant under *Bruen*.

***Bruen's Second Step.*** California complains that the district court required it to "identify a historical twin instead of a historical analogue." Dkt. #11, ID 12704847, at 26. But the historical regulations it offered to carry its burden are far from representative analogues. It mistakenly focuses only on the subject matter of the regulations (firearms) and ignores the distinguishing objects of the regulations. *Bruen*, 142 S. Ct. at 2133 (conducting the step-two analysis requires courts to consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense").

Take for example the "proving laws" on which California relies. The object, or purpose, of those laws was to confirm the integrity of the firearm. They "proved" that

what the manufacturer claimed about the firearm was what the purchaser got. The UHA is very different.[1] It requires manufacturers to incorporate certain features in their firearms, and any firearms lacking such features are deemed unsafe, whether the firearms are otherwise manufactured as specified. The UHA's goal is not product integrity; rather, it's product elimination and replacement. And that type of regulation lacks a "well-established and representative historical analogue." *See Bruen*, 142 S. Ct. at 2133.

Gunpowder storage laws are even more attenuated. Their purpose was fire prevention from volatile black powder. The modern analogue is fire codes, not the UHA. To justify the UHA, California would need to point to "well-established" historical laws that banned gunpowder because of its danger to public safety and required in its place a different firing agent—and for good measure, it would need to be a firing agent that was commercially unavailable. Of course, those laws never existed.

California thinks that it is sufficient to show that the UHA and proving and gunpowder storage laws share an abstract goal of "consumer safety." But that isn't enough. Otherwise, governments today could justify any infringement on the right to keep and bear arms, just as long as they did so in the name of "consumer safety." That is why the Supreme Court dismissed New York's similar attempt at abstraction. The Court granted that regulating firearm possession in certain "sensitive" places was permissible, but it

[1] The UHA's drop tests, which are not at issue in this case, are closer analogues to the proving laws. The additional design requirements at issue here are not merely superfluous tests to uncover product defects.

rejected the "attempt to characterize New York's proper-cause requirement as a 'sensitive-place' law"—the "argument would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense." *Bruen*, 142 S. Ct. at 2133-34. Likewise, accepting California's argument would justify a handgun ban or any other firearm restriction that the legislature deems necessary for public safety.

* * * * *

California's efforts to remove the UHA from *Bruen*'s full analysis run headlong into this Court's precedent. In *Jackson*, this Court held that regulations on "ammunition do not fall outside [the Second Amendment]." *Jackson*, 746 F.3d at 968. In *Teixeira*, this Court held that the "ability to acquire arms" also fell within the Second Amendment. *Teixeira*, 873 F.3d at 677. A citizen's right to purchase handguns in common use is plainly Second Amendment protected activity. The UHA is subject to *Bruen*'s full analysis—a test it does not pass.

## CONCLUSION

For the foregoing reasons, this Court should affirm.

Respectfully Submitted,

**RAÚL R. LABRADOR**
Attorney General
*State of Idaho*

**THEODORE J. WOLD**
Solicitor General

Date: June 2, 2023

*/s/ Theodore J. Wold*
Theodore J. Wold
*Solicitor General*
Joshua N. Turner
*Deputy Solicitor General*
Timothy J. Longfield
*Deputy Attorney General*
Idaho Attorney General's Office
Statehouse, Room 210
Boise, ID 83720

*Additional State Signatories*

STEVE MARSHALL
Attorney General
*State of Alabama*

TREG TAYLOR
Attorney General
*State of Alaska*

TIM GRIFFIN
Attorney General
*State of Arkansas*

ASHLEY MOODY
Attorney General
*State of Florida*

CHRISTOPHER M. CARR
Attorney General
*State of Georgia*

THEODORE E. ROKITA
Attorney General
*State of Indiana*

BRENNA BIRD
Attorney General
*State of Iowa*

KRIS W. KOBACH
Attorney General
*State of Kansas*

DANIEL CAMERON
Attorney General
*Commonwealth of Kentucky*

LYNN FITCH
Attorney General
*State of Louisiana*

LYNN FITCH
Attorney General
*State of Mississippi*

ANDREW BAILEY
Attorney General
*State of Missouri*

AUSTEN KNUDSEN
Attorney General
*State of Montana*

MICHAEL T. HILGERS
Attorney General
*State of Nebraska*

DREW H. WRIGLEY
Attorney General
*State of North Dakota*

DAVE YOST
Attorney General
*State of Ohio*

GENTNER DRUMMOND
Attorney General
*State of Oklahoma*

ALAN WILSON
Attorney General
*State of Carolina*

MARTY J. JACKLEY
Attorney General
*State of South Dakota*

SEAN REYES
Attorney General
*State of Utah*

PATRICK MORRISEY
Attorney General
*State of West Virginia*

BRIDGET HILL
Attorney General
*State of Wyoming*

JASON S. MIYARES
Attorney General
*Commonwealth of Virginia*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a), and Ninth Circuit Rule 32-1, I certify that the attached response brief is proportionately spaced, has a typeface of 14 points or more, and contains 3,099 words.

Date: June 2, 2023

*/s/ Theodore J. Wold*
Theodore J. Wold

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Theodore J. Wold*
Theodore J. Wold