Biofire Technologies Inc.
PO Box 408
Broomfield, CO 80038
smartgun.com





RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUN 09 2023

FILED
DOCKETED

DATE

INITIAL

CORRECTED AMICUS LETTER

JUNE 2, 2023

Molly C. Dwyer, Clerk of the Court
Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

> In re: *Boland v. Bonta*, Case no 23-55276
> Amicus Letter of Biofire Technologies Inc. Expressing Interest in Joining Plaintiff-Appellees' Arguments

Dear Ms. Dwyer,

In line with Circuit Advisory Committee Note to Rule 29-1, Biofire Technologies Inc. ("***Biofire***") respectfully submits this amicus curiae letter stating that it wishes to adopt the Plaintiffs-appellees' arguments in support of affirmance of the district court's ruling. Biofire writes this letter to the Court because it believes it has a unique perspective on handgun safety technology that the record in this matter should reflect. Biofire does not intend to burden the Court with duplicative content and only seeks to inform the Court of the importance of reducing barriers to innovations in handgun safety. Specifically, Biofire believes that the California Unsafe Handgun Act (the "***UHA***") disincentivizes innovation in firearm safety by mandating arbitrary technology choices which only a portion of gun manufacturers must comply with, and further by requiring that advances in technology come at the expense of gun owners' rights to choose which pistols suit their needs and preferences.

The Biofire Smart Gun is the world's first commercially available biometrically authenticated firearm. It provides the gun's owner with instant access to protection while ensuring that the gun is secure against unauthorized use, including access by children and use if it is stolen. Since its founding in 2016, Biofire has won respect and accolades from gun owners and supporters who believe in technology's potential to help prevent thousands of firearm accidents, criminal misuse, suicides, and other tragic outcomes. This state-of-the-art handgun gives gun owners a more secure option for home defense at a time when millions of American children live in households with unsecured firearms.

Biofire's best-in-class technical teams, bringing decades of experience in defense, military ballistics testing, and high precision-targeting weapons systems, designed the Smart Gun from the ground up to make it impracticable to convert the Smart Gun into a traditional firearm. The firearm is locked in its default state, and instantly unlocks only when either its fingerprint or its facial recognition sensors identify that an authorized user is holding the gun. For the gun's owner and any

additional users authorized by the owner, the Smart Gun shoots like a traditional firearm. When the Smart Gun leaves the control of an authorized user, the firearm instantly locks, making it secure without any further action by the user. To anyone else not authorized, the Smart Gun remains locked, therefore preventing access by children, teens, or others. We hope to have a meaningful impact on reducing the risk of accident, injury, and suicide in households with firearms.

Although the UHA's stated goal is safety, Biofire asserts that the UHA stifles innovation in firearm safety in two ways. First, by mandating a specific, novel, never-before-commercialized microstamping technology, the UHA requires emerging companies like Biofire to spend limited financial, research, and development resources to attempting implementation of the government's specifically and arbitrarily designated technology. It is worth noting that no company has implemented microstamping in a commercial firearm in the more than 15 years since the microstamping concept was first introduced by California lawmakers. This requirement comes at the expense of developing and implementing other safety innovations, like biometric authentication, that may have a more meaningful impact on safety. Further, because many pre-existing manufacturers' products were admitted to California's handgun roster and continue to be available to sale in California, this requirement places an unfair burden on new, innovative market entrants like Biofire that existing manufacturers are not required to meet. This double standard makes it more difficult for companies like Biofire to bring innovations in firearm safety technology to California consumers.

Second, by requiring that three pistols be removed from the handgun roster for every one that is added, the UHA creates a zero-sum game that puts emerging companies like Biofire in the position of being the catalyst for removal of a consumer's preferred firearm, with no discernible safety benefit. California gun owners value the ability to choose which handgun is appropriate for their use case, and restrictions on this choice are generally unwelcome. Requiring innovators to be the source of these restrictions hurts their brand reputation with the very customers who may otherwise be enthusiastic adopters of these innovative and safer firearms. Based on strong early demand from California residents, Biofire believes that many California gun owners have and will determine that the Smart Gun will be the best choice for them. However, to the extent that gun owners believe that introduction of the Smart Gun comes at the expense of options available to the gun community, such gun owners will choose to vote with their purchasing power. If gun owners refuse to purchase the Biofire Smart Gun, the technology is not able to save lives.

In sum, the UHA's requirements make it harder to bring innovative, safer firearms to market and, by eroding gun owners' freedom of choice, the UHA makes innovative firearms less likely to be adopted by gun owners who otherwise would purchase them.

Biofire has received thousands of pre-orders from customers across the country and plans to deliver the first Smart Guns to consumers in late 2023. California is already the largest market for the Biofire Smart Gun based both on raw numbers and on a population adjusted basis; but because the Biofire Smart Gun lacks a microstamping mechanism, the same as every other traditional handgun on the market, it does not meet the requirements of the UHA. So, the provisions of the California Unsafe Handgun Act may restrict the Smart Gun from reaching California. If those provisions stand, Biofire would be forced to refund and cancel hundreds of planned deliveries of the Smart Gun to California residents who have chosen to adopt this lifesaving technology.

In reviewing the State's opening brief on appeal, Biofire notes the State's claim that striking down the challenged provisions would allow the retail sale of a "significantly expanded pool of semiautomatic pistols lacking safety features that can save lives". Appellant's Opening Brief, at 3. In practice, the opposite has happened: the UHA's arbitrary requirements have *limited* safety options and only stand in the way of allowing Californians access to a more secure handgun.

Biofire appreciates the Court's consideration of its perspective in this matter.

Sincerely,

**Kai Kloepfer**

Chief Executive Officer
Biofire Technologies Inc.

CERTIFICATE OF SERVICE

I, Nicole Matthews, am over the age of eighteen (18) years and am not a party to the within

action. My business address is PO Box 408, Broomfield, CO 80038.

I hereby certify that on June 6, 2023, I served a corrected copy of the **Amicus Letter of Biofire**

**Technologies Inc. Expressing an interest in Joining Plaintiff-Appellees' Arguments** by mail by depositing

with the U.S. Postal Service with postage thereon fully prepaid at Broomfield, Colorado, to the following

parties:

C.D. Michel
MICHE & ASSOCIATES, P.C.
180 E. Ocean Blvd, Suite 200
Long Beach, CA 90802

Paul D. Clement
Erin E. Murphy
Mariel A. Brookins
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314

Robert Bonta
Charles Sarosy
Attorney General of California
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230

Molly C. Dwyer, Clerk of the Court
Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

**R E C E I V E D**
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**JUN 0 9 2023**

FILED_____
DOCKETED_____  _____
                    DATE          INITIAL

Dated: June 6, 2023

Nicole Matthews