No. 23-55276

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Lance Boland, Mario Santellan; Reno May; Jerome Schammel; and California Rifle & Pistol Association, Inc.,
*Plaintiffs-Appellees*,

v.

Rob Bonta, Attorney General of the State of California,
*Defendant-Appellant*.

**On Appeal from the United States District Court
for the Central District of California**
No. 22-cv-01421-CJC-ADS
The Honorable Cormac J. Carney, Judge

**APPELLANT'S SUPPLEMENTAL BRIEF**

Rob Bonta
*Attorney General of California*
Thomas S. Patterson
*Senior Assistant Attorney General*
Anthony R. Hakl
John D. Echeverria
*Supervising Deputy Attorneys General*
Meghan H. Strong
*Deputy Attorney General*

Charles J. Sarosy
*Deputy Attorney General*

California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6356
Fax: (916) 731-2124
Email: Charles.Sarosy@doj.ca.gov
  *Attorneys for Defendant-Appellant*

May 1, 2025

## TABLE OF CONTENTS

Page

Introduction ............................................................................................... 1

Argument .................................................................................................. 3

    I.    *Duncan* Confirms that the District Court Erred in Its Application of *Bruen* .................................................................. 3

        A.    *Duncan* Rejects Plaintiffs' "Simplistic Approach" to the Threshold Analysis ...................................................... 3

        B.    *Duncan* Confirms that the Challenged Safety Requirements Fit Within the Nation's Historical Tradition of Firearms Regulation .................................... 8

    II.    Remand Is Not Necessary ........................................................ 12

Conclusion ............................................................................................. 13

i

## TABLE OF AUTHORITIES

Page

**CASES**

*B&L Prods., Inc. v. Newsom*
   104 F.4th 108 (9th Cir. 2024) ....................................................... 3, 4, 5, 7

*Decker v. Nw. Env't Def. Ctr.*
   568 U.S. 597 (2013) ................................................................................. 2

*Duncan v. Bonta*
   133 F.4th 852 (9th Cir. 2025) (en banc) ............................................. *passim*

*New York State Rifle & Pistol Association v. Bruen*
   597 U.S. 1 (2022) ............................................................................ *passim*

*Pena v. Lindley*
   898 F.3d 969 (9th Cir. 2018) .................................................................. 12

*Teixeira v. Cty. of Alameda*
   873 F.3d 670 (9th Cir. 2017) (en banc) ..................................................... 5

*United States v. Rahimi*
   602 U.S. 680 (2024) ............................................................ 8, 11, 12, 13

*Wolford v. Lopez*
   116 F.4th 959 (9th Cir. 2024) ................................................................ 13

**STATUTES**

Cal. Penal Code
   §§ 27531-27534.2 .................................................................................... 2
   § 31910 .......................................................................................... 2, 6, 13

# TABLE OF AUTHORITIES
## (continued)

Page

**CONSTITUTIONAL PROVISIONS**

Second Amendment ................................................................................*passim*

**OTHER AUTHORITIES**

Cal. Att'y Gen., Handguns Certified for Sale,
https://tinyurl.com/mw7nm4fm (last visited Apr. 30, 2025) ......................... 6

Office of the Cal. Att'y Gen., Recently Added Handgun Models,
https://tinyurl.com/3cr5493p (last visited Apr. 30, 2025) ............................ 6

Oral Argument, *Boland v. Bonta* (No. 23-55276) (Aug. 23,
2023), https://tinyurl.com/v6h2y4pk) ....................................................... 5, 6

Senate Bill 452, 2023-2024 Reg. Sess. (Cal. 2023) ........................................... 2

## INTRODUCTION

This Court's en banc opinion in *Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025), confirms what was already clear: the district court abused its discretion by preliminarily enjoining two feasible handgun-safety requirements that prevent deaths and injuries from unintentional shootings. Those requirements pass constitutional muster under the framework announced in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022).

A plaintiff does not satisfy the threshold *Bruen* analysis with a simple tally of how many semiautomatic pistols lack a chamber load indicator and magazine disconnect mechanism—a number that merely reflects the fact that firearms manufacturers have chosen to not include those features as "standard equipment." *Duncan*, 133 F.4th at 882-883 & n.12. Requiring two safety features does not amount to a "broad prohibition" of handguns (ASB 10),[1] and any ancillary right to acquire firearms does not encompass a desire to purchase handguns without these safety features. As to the historical analysis, the two challenged features fit comfortably within *Duncan*'s identified tradition of regulating firearm components to prevent devastating harm, based on the same gunpowder-storage laws relied

---

[1] "ASB" refers to the Appellees' Supplemental Brief (Dkt. 83); "OB" refers to the Opening Brief (Dkt. 11); "AB" refers to the Answering Brief (Dkt. 40); and "RB" refers to the Reply Brief (Dkt. 69).

upon in *Duncan* as well as several firearm and ammunition inspection laws. *Id.* at 876-878; OB 31-40.

While *Duncan* forecloses their arguments, Plaintiffs assert that *Duncan* "provides no basis to disturb" the district court's conclusions. ASB 3. But their continued assertion that "virtually no handgun has" both a chamber load indicator and magazine disconnect mechanism (ASB 3) misstates the record in this case and is disconnected from the reality that more than a dozen firearm manufacturers are producing semiautomatic pistols with both safety features for retail sale in California.[2] *Duncan* reinforces many of the arguments made in the briefing in this case and confirms that the district court abused its discretion in granting the preliminary injunction, warranting reversal without the need for remand.

---

[2] This brief does not address the microstamping requirement formerly at Penal Code section 31910, subdivision (b)(6) because Plaintiffs' challenge to it is now moot. Plaintiffs disagree (ASB 11 n.2), but as previously discussed, Senate Bill 452 removed the microstamping requirement from section 31910 and imposed a substantially different—and delayed—microstamping requirement, codified in Penal Code sections 27531 through 27534.2. *See* Dkt. 76 (discussing S.B. 452, 2023-2024 Reg. Sess. (Cal. 2023)); RB 13-14 n.7. There is no "live controversy" as to the now-defunct microstamping requirement, and it would be "impossible for a court to grant any effectual relief." *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013).

2

# ARGUMENT

## I. DUNCAN CONFIRMS THAT THE DISTRICT COURT ERRED IN ITS APPLICATION OF BRUEN

### A. *Duncan* Rejects Plaintiffs' "Simplistic Approach" to the Threshold Analysis

*Duncan*'s threshold inquiry confirms that the district court's analysis, and Plaintiffs' defense of the same, are incompatible with *Bruen*.

In *Duncan*, the Court explained that "Arms," as used in the Second Amendment, "broadly includes nearly all weapons used for armed self-defense." 133 F.4th at 866. Additionally, the "Amendment's text must carry an implicit, corollary right to bear the components or accessories necessary for the ordinary functioning of a firearm," as well as an ancillary right to acquire firearms "to the extent necessary to serve lawful purposes such as self-defense." *Id.* at 866-867 (quoting *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 118 (9th Cir. 2024), *petition for cert. denied*, No. 24-598 (U.S. Apr. 28, 2025)). Because large-capacity magazines are unnecessary accessories for the ordinary operation of a protected weapon, the Court concluded they are not protected. *Id.* at 866-869. The fact that "many firearm owners own large-capacity magazines," or that such magazines were allegedly in common use for self-defense, did not alter this conclusion. *Id.* at 866 n.2, 882-883. *Duncan* rejected the "simplistic approach" that the number of an item owned is dispositive of whether it is constitutionally protected because, among other things, it was unclear how many large-capacity magazines were

3

owned by civilians, let alone chosen by them for self-defense. *Id.* at 882-883 & n.12. While large-capacity magazines are sold with many firearms "as standard equipment," "there is no constitutional right to factory settings." *Id.* at 883 n.12.

It is clear from *Duncan* that the threshold inquiry is not a "low bar" (AB 21), and that simply looking at whether "Arms" are regulated is not the "end of the threshold-textual inquiry." ASB 5. Plaintiffs posit that any regulation touching on firearms satisfies their burden. ASB 6-7; *contra B&L Prods.*, 104 F.4th at 117-118 & n.19. In their view, Plaintiffs have met their burden merely because the handguns they wish to purchase that lack these features are allegedly "common everywhere else in the nation." AB 20; ASB 4. But as in *Duncan*, this Court should "reject that simplistic approach." 133 F.4th at 882. At its core, Plaintiffs' argument is that because firearms manufacturers have chosen not to include chamber load indicators and magazine disconnect mechanisms as standard features in semiautomatic pistols, California cannot require the inclusion of such features. AB 25-27. That is no different from asserting that they have a "constitutional right to factory settings," which is untenable under *Duncan*. *Id.* at 883 n.12. Similar to the machine guns example described in *Duncan*, if manufacturers had included chamber load indicators and magazine disconnect mechanisms as standard features in semiautomatic pistols, would the challenged requirements suddenly switch from unconstitutional to constitutional? At oral argument, Plaintiffs suggested the

4

answer was yes (Oral Argument at 33:30, *Boland v. Bonta* (No. 23-55276) (Aug. 23, 2023), https://tinyurl.com/v6h2y4pk), but *Duncan* made clear that the Court does "not read the Constitution or the Supreme Court's precedents to hinge on the necessarily speculative answer[]" to this question. *Id.* at 883. This makes sense because Plaintiffs' approach would allow firearms manufacturers' decisions about what "comes as standard equipment"—mischaracterized as consumer preferences (ASB 6)—to dictate which safety features a State may require under the Second Amendment. *Id.* at 883 n.12; OB 28; RB 9, 14.

Unlike the Court in *Duncan*, the district court accepted "Plaintiffs' facile invitation" to adopt this approach and "jettison" the framework outlined in *Bruen*. 133 F.4th at 883; OB 28. The district court reasoned that the Second Amendment includes an "attendant . . . right to acquire state-of-the-art handguns for self-defense." 1-ER-14. The district court did not define what constituted a "state-of-the-art handgun," other than to suggest it would be a newer model that Plaintiffs desire to purchase. 1-ER-5; 1-ER-12. But *Duncan* made clear that the ancillary acquisition right does not go so far as to include purchasing a firearm with "factory settings" or "standard equipment" that lacks a chamber load indicator and magazine disconnect mechanism. *Id.* at 883 n.12; *see also Teixeira v. Cty. of Alameda*, 873 F.3d 670, 680 (9th Cir. 2017) (en banc) ("[T]he Second Amendment does not elevate convenience and preference over all other considerations."); *B&L*

*Prods.*, 104 F.4th at 118 ("The Supreme Court itself has suggested that the ancillary right . . . to acquire firearms [] only implicates the Second Amendment in limited circumstances.").

Many firearms manufacturers have simply chosen not to incorporate chamber load indicators and magazine disconnect mechanisms as standard features in their semiautomatic pistols, even though they have demonstrated these features can be incorporated into new and existing models. Before the district court granted the preliminary injunction in this case, there were 32 semiautomatic pistols from four manufacturers with a chamber load indicator and magazine disconnect mechanism available for retail sale. 1-ER-211. Since the injunction of the former microstamping requirement took effect, 73 semiautomatic pistols with one or both of these features—including a biometric smart gun manufactured by Biofire—have become, and remain, available for retail sale in the State.[3] Cal. Att'y Gen., Handguns Certified for Sale, https://tinyurl.com/mw7nm4fm (last visited Apr. 30, 2025);[4] *see also* RB 11-12; Oral Argument at 0:26, *Boland v. Bonta*,

---

[3] Both safety features are not required for all pistols because the chamber load indicator requirement applies to only centerfire, but not rimfire, semiautomatic pistols. Cal. Penal Code § 31910(a)(2)(D), (E).

[4] By typing an asterisk ("*") in the "Search" bar at this webpage, one can see the 73 semiautomatic pistols with one or both features that have become available for retail sale. *See also* Office of the Cal. Att'y Gen., Recently Added Handgun Models, https://tinyurl.com/3cr5493p (last visited Apr. 30, 2025) (listing models that have become more recently available for retail sale).

6

https://tinyurl.com/v6h2y4pk. Over a dozen manufacturers offer the sum of these pistols,[5] thereby confirming that these safety features "are capable of implementation." Nat'l Shooting Sports Found., Inc. Amicus Br. 1, 20, Dkt. 54.

The fact that firearms manufacturers chose not to implement these features until recently cannot, under *Duncan*, lead to the presumptive protection of pistols without those features. Otherwise, *Bruen*'s threshold inquiry would become "a dead letter" (ASB 5), because it would hinge on malleable market forces and decisions by firearms manufacturers, not "whether Plaintiffs' proposed conduct falls within the text of the Second Amendment." *Duncan*, 133 F.4th at 883. Properly analyzed, California's commercial requirement that semiautomatic pistols available for retail sale in the State have a chamber load indicator and a magazine disconnect mechanism does not "meaningfully impair[] an individual's ability to access firearms." *B&L Prods., Inc.*, 104 F.4th at 118. Just as the Second Amendment's text "covers modern instruments that facilitate armed self-defense" (*Duncan*, 133 F.4th at 866 (quoting *Bruen*, 597 U.S. at 28)), the text does not preclude States from addressing the "regulatory challenges posed by firearms today" by requiring modern weapons to have modern safety features that reduce

---

[5] These manufacturers include, in alphabetical order: Biofire; Browning; Century Arms, Inc.; FMK Firearms; Girsan; Heckler & Koch; Kahr Arms; Kimber; Rost Martin; Shadow Systems; Sig Sauer; Smith & Wesson; Springfield Armory; Sturm, Ruger, & Co.; and Walther.

7

the risk of unintended harm. *Bruen*, 597 U.S. at 27. Plaintiffs have thus failed to meet their burden at *Bruen*'s first step.

### B. *Duncan* Confirms that the Challenged Safety Requirements Fit Within the Nation's Historical Tradition of Firearms Regulation

As in *Duncan*, even assuming that Plaintiffs' proposed conduct were presumptively protected, their defense of the preliminary injunction "fares no better" in the historical inquiry because the district court "misunderstood *Bruen*'s methodology and had applied it too stringently." *Duncan*, 133 F.4th at 869-870 (citing *United States v. Rahimi*, 602 U.S. 680, 691 (2024)).

*Duncan* explained that the methodology for the historical inquiry, as outlined in *Rahimi*, "involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 133 F.4th at 871 (quoting *Rahimi*, 602 U.S. at 692). Although the Court concluded that the "more nuanced approach" described in *Bruen* applied because large-capacity magazines implicate dramatic technological change and unprecedented societal concerns, the result of the historical inquiry did "not hinge" on which approach applied. *Id.* at 874. Taking instead "the most conservative path," the Court applied "*Rahimi*'s straightforward approach." *Id.*

Relying on "Founding-era gunpowder-storage regulations," the Court identified "an early tradition of laws seeking to protect innocent persons from

8

infrequent but devastating harm by regulating a component necessary to the firing of a firearm." 133 F.4th at 876. These gunpowder-storage laws shared the "same justification for burdening the right to armed self-defense" as that for the California law barring the possession of large-capacity magazines. *Id.* at 877. Additionally, both sets of laws were "'relevantly similar' in how they burden the right to armed self-defense" because they both "target the component that causes or exacerbates the devastating harm." *Id.* at 878. The large-capacity magazine law accordingly fell within this identified tradition of firearm regulation. *Id.*

As in *Duncan*, the more nuanced approach applies here because the chambering of ammunition in a modern semiautomatic firearm—making it not obvious that the firearm is loaded—represents a dramatic technological change from the "single-shot, muzzle-loading firearms common at the Founding" and the "[r]epeating Henry and Winchester rifles" popular after the Civil War. 133 F.4th at 874; OB 32; RB 16-17. Plaintiffs' claim to the contrary directly contravenes *Duncan* (*compare id.* at 873-874, *with* ASB 12); as does their assertion that the district court applied the more nuanced approach simply because it permitted analogical reasoning (*compare id.* at 876-882 (using analogical reasoning when applying "*Rahimi*'s straightforward approach")), *with* ASB 11. But as in *Duncan*, the result of the inquiry is the same even under "*Rahimi*'s straightforward approach." *Id.* at 874.

9

Using the straightforward approach, the chamber load indicator and magazine disconnect mechanism requirements clearly "fall[] within the national historical tradition of regulating a component necessary to the firing of a firearm in order to prevent or mitigate devastating harm caused or exacerbated by that component." *Duncan*, 133 F.4th at 878. Plaintiffs do not address this tradition other than to say the Unsafe Handgun Act "does not fit within" it because handguns are not firearm components (ASB 7), but this overlooks the specific requirements at issue here, which plainly regulate firearm components. A chamber load indicator provides a notification when a pistol is loaded, and a magazine disconnect mechanism prevents a pistol from firing when a detachable magazine is not inserted. OB 37. These features can be incorporated into new and existing pistol models—as demonstrated by the growing number of pistols with these features available for retail sale—and thus "impose[] no limit whatsoever . . . on the number of firearms a person may own." *Id.* at 879.

The challenged safety requirements are relevantly similar to the gunpowder-storage laws credited in *Duncan*. *Duncan*'s comparable justification and comparable burden analysis there is equally applicable here. 133 F.4th at 877-878. The gunpowder-storage laws "imposed significant restrictions on how and where gunpowder could be stored" to help prevent the infrequent "fires and explosions" caused by gunpowder that could result in "devasting harm." *Id.* at 877. The

10

chamber load indicator and magazine disconnect mechanism also "prevent or mitigate" the known—and far from "infrequent" (*contra id.* at 875)—harm of unintentional shootings when the shooter does not realize the pistol is loaded. Both sets of laws are intended to prevent death and injury from accidental and premature ignition. The required features have been shown to prevent the devastating harm of death and injury to firearm owners and their family members or friends—including children—resulting from unintentional shootings. *See* OB 53-54 (collecting studies concluding that these features could prevent deaths from unintentional shootings); Brady Amicus Br. 7-14, Dkt. 17 (collecting statistics of deaths and injuries resulting from unintentional shootings and mistaken beliefs about when a firearm is loaded).

As to burden, the gunpowder-storage laws and two challenged safety features both "target the component that causes or exacerbates the devasting harm." *Duncan*, 133 F.4th at 878. The former targeted the gunpowder itself because its corrosive nature could lead to fires and explosions (*id.* at 874), while the latter targets the pistol's loading process by incorporating two additional safety features. While these burdens might not be "an exact match," they "need not be." *Id.* at 880 (citing *Rahimi*, 602 U.S. at 698).[6]

---

[6] As in *Duncan*, the burden analysis here focuses on "the method of burdening the right, rather than the magnitude of the burden." *Id.* at 880 n.11. But

(continued…)

Another category of historical laws—firearm and ammunition inspection (or "proving") laws—were not addressed in *Duncan*, but equally support the tradition set by the gunpowder-storage laws for the reasons previously explained in this case's briefing. OB 33-40; RB 17-23. Plaintiffs' retorts that these inspection laws "were just quality-control regulations" and that there were not enough in existence are foreclosed by *Duncan* (ASB 9), which reiterated *Bruen*'s guidance that "a historical twin is not required," and also reiterated the observation in *Rahimi* that it is a "flawed" assumption that "Founding-era legislatures maximally exercised their power to regulate." *Duncan*, 133 F.4th at 881 (quoting *Rahimi*, 602 U.S. at 739 (Barrett, J., concurring)). As in *Duncan*, "any difference" between the historical laws and the challenged regulation "is precisely because of the factors that *Bruen* mentioned." *Id.* at 881. The two challenged requirements fit within the Nation's tradition of regulating firearms.

## II. REMAND IS NOT NECESSARY

The briefing in this case and *Duncan* make clear that the district court abused its discretion in preliminarily enjoining the two challenged requirements in response to Plaintiffs' facial challenge, the "most difficult challenge to mount

---

if the "magnitude of the burden is relevant," *id.*, then the two safety features "inform[] the owner when the gun is loaded so that the weapon may be fired in self-defense" and "place almost no burden on the physical exercise of Second Amendment rights." *Pena v. Lindley*, 898 F.3d 969, 978 (9th Cir. 2018).

successfully." *Rahimi*, 602 U.S. at 693; *see also Wolford v. Lopez*, 116 F.4th 959, 984 (9th Cir. 2024), *petition for cert. filed*, No. 24-1046 (U.S. Apr. 1, 2025)); OB 44-56. This is particularly true given the dozens of semiautomatic pistols in which several manufacturers have incorporated these two features.[7]

Plaintiffs agree that remand is unnecessary at this juncture (albeit for different reasons). ASB 7-8. This Court should resolve this appeal, vacate the preliminary injunction, and allow the chamber load indicator and magazine disconnect mechanism requirements to remain in effect while the district court resolves the merits of the case, including Plaintiffs' challenge to the drop-safety test, firing test, and all other aspects of the Unsafe Handgun Act. *See* 5-ER-832-833 (requesting declaratory and injunctive relief relating to "Penal Code sections 31910 through 32110").

## CONCLUSION

For these reasons, *Duncan* provides further support for this Court to reverse and vacate the preliminary injunction.

---

[7] The 73 recently available pistols include models that some Plaintiffs desired to purchase, such as the Sig Sauer P365, Ruger LCP Max, and Smith & Wesson Shield Plus. 5-ER-787; 5-ER-789.

Dated: May 1, 2025     Respectfully submitted,

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
ANTHONY R. HAKL
JOHN D. ECHEVERRIA
*Supervising Deputy Attorneys General*
MEGHAN H. STRONG
*Deputy Attorney General*


s/ *Charles J. Sarosy*

CHARLES J. SAROSY
*Deputy Attorney General*
*Attorneys for Defendant-Appellant*

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-55276

I am the attorney or self-represented party.

**This brief contains** 2,958 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

● complies with the length limit designated by court order dated March 27, 2025.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Charles J. Sarosy    **Date** May 1, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**    Rev. 12/01/22

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Lance Boland, et al. v. Rob Bonta** | Case No. | **23-55276** |

I hereby certify that on May 1, 2025, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### *APPELLANT'S SUPPLEMENTAL BRIEF*

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on May 1, 2025 at Los Angeles, California.

| | |
|---|---|
| G. Agcaoili | /s/ G. Agcaoili |
| Declarant | Signature |